FLORENCE VanLUE WILLIAMS, SUBSTITUTED FOR AR-
THUR GARFIELD WILLIAMS (DECEASED), PETI-
TIONER-RESPONDENT, v. NEW JERSEY STATE HIGH-
WAY DEPARTMENT, RESPONDENT-PROSECUTOR.

Submitted October 5, 1943—Decided December 28, 1943.

Before Justices CASE, DONGES and PORTER.

For the petitioner-respondent, *Joseph R. Megill.*

For the respondent-prosecutor, *David T. Wilentz,* Attorney-General, and *Robert S. Hartgrove,* Assistant Attorney-General.

The opinion of the court was delivered by

CASE, J. The matter comes before us on application for a writ of *certiorari* to review the determination and judgment made April 9th, 1943, by the Camden County Common Pleas Court on the appeal from the determination of facts and rule for judgment of the Workmen's Compensation Bureau made September 16th, 1942. With the application comes the stipulation that if the court should decide that a writ of *certiorari* should issue the court may, if it will, decide the case on its merits as if a writ had theretofore issued. The determination was, in part, that Arthur Garfield Williams suffered a coronary thrombosis as the result of an accident which arose out of and in the course of his employment and that as a result thereof he suffered a disability total in character and permanent in quality.

Prosecutor's first contention is that the determination of the Compensation Bureau was erroneous in finding that the petitioner "suffered a coronary thrombosis which caused a permanent disability total in character" and that the determination should, under the authority of the statute, have grounded in a finding that there was a "disability total in character and permanent in quality." We think that the wording of the award was in substantial accord with the statute. The Bureau found that the disability was both permanent and total; and that, in our understanding, is what the statute requires. The variance, such as it was, was corrected by the Court of Common Pleas on the appeal. The Pleas, reviewing both the reasoning of and the result reached by the lower tribunal (*Calicchio* v. *Jersey City Stock Yards Co.,* 125 *N. J. L.* 112, 117), found that the disability was "total in character and permanent in quality"—the precise terminology for which the appellant argues.

It is next said that the evidence does not support a determination that the disability was permanent in quality. There is ample proof that Williams had suffered from arterio-

sclerosis, that his arteries had progressively thickened and because of the diminished opening had retarded the blood flow, and that ultimately a blood clot formed which, unable to pass through the opening, occluded or shut off the blood stream in one of the arteries or artery branches. That result is known as a coronary thrombosis and, without dispute, happened to Williams. Whether the result did, or could have, come from a trauma was sharply controverted, but there was support for resolving the dispute in the affirmative and we are not disposed to reverse the lower tribunals for so doing. We do not discover in the proofs a statement *in haec verba* that the total disability which came upon Williams as an incident to the thrombosis was permanent in quality. But it is reasonably clear from the medical testimony that the disability was total from the time of the accident or a day or two thereafter until the time of the hearing, a period of one year and eight months. We find no serious dispute in the proofs over that proposition, and we find no denial therein that the disability was permanent in quality. The controversy waged over the question whether the thrombosis was in any degree attributable to the trauma. There is, we think, adequate support for the finding that the disability was both total and permanent. Dr. Albright testified for the employer and said this on cross-examination:

"*Q.* \* \* \* But there are cases, are there not, especially in younger persons where there would be a healing, and after, say, six months or a year, a person might be apparently normal again?

"*A.* You mean after a coronary thrombosis?

"*Q.* Yes.

"*A.* Of course, the degree of recovery is a variable thing also, but, I mean, some people seem to make a decent recovery from coronary thrombosis, and others are crippled for life. Of course, the degree of recovery depends on how big the artery is that is blocked off. If it is a big artery, then that means quite a large area of the heart is deprived of the blood supply, and interruption of that would be serious. If it's a small artery, it would be only a smaller part of the heart muscle and the results are not so disastrous."

Dr. Albright, as a heart specialist, treated the patient while the latter was in the Fitkin Hospital at Neptune, New Jersey, soon after the heart attack, and Dr. Jordan attended him both before and after he entered the hospital; nevertheless Williams, 60 years of age, was not restored to his ability to work and at the end of the treatments and continuously until the hearing was totally disabled with no substantial suggestion in the proofs that he would ever be otherwise. Dr. F. J. Altschul, having examined Williams at the instance of the employer, reported on July 8th, 1942:

"I do not feel that this man should be asked to do any work which entails any type of exertion whatsoever in view of the fact that the coronary thrombosis which he suffered in November, 1940, has left his heart muscle apparently in a very weakened state and any type of heavy work would precipitate a very severe degree of heart failure."

Dr. Kroll testified "I consider his disability one hundred per cent., total disability;" and Dr. Meehan—"The petitioner has total disability because of an inability for any sustained effort." It further came into the proofs from the employer's side of the case that the coronary thrombosis was "the end-result" and while that was said by a medical witness in speaking of the thrombosis as the inevitable result of a progressive disease and not as coming from a strain or an accident, nevertheless the sinister finality of the man's condition, whatever the cause, may reasonably be inferred. The point is not sustained.

Prosecutor further contends that the Common Pleas Court lost jurisdiction over the subject-matter of the appeal, because "while the appeal was pending the petitioner, Arthur Garfield Williams, allegedly died, as suggested upon the record." It appears that Williams died November 21st, 1942, which was after the hearing and after the appeal had been taken. There is reason to believe from correspondence passing between the attorneys that the death had been suggested on the record. Nevertheless, the appeal was carried on without change of title and the opinion on the appeal, filed February 24th, 1943, bore the name of Arthur Garfield Williams as the petitioner-respondent. It was not until April 9th, 1943,

contemporaneously with the signing of the determination and judgment, that an order was made substituting Florence VanLue Williams, widow, for Arthur Garfield Williams as petitioner. The record does not disclose upon what showing that order was made or what was the cause of death. The fact is, however, that the judgment in the Pleas is entitled in the name of the widow as substituted petitioner and that while reciting that the claimant died leaving a widow *"and other dependents"* nevertheless runs in favor of the "petitioner-appellee," who, according to the contemporaneous order, is the widow, as such. Various questions arise upon which no record is presented and which we are, therefore, unable to answer, such for instance as the disposition to be made of the installments that were due and unpaid to Williams at the time of his death. The assumption from the determination in the Pleas is that the widow is entitled to the entire award in the same manner and in the same amounts as her husband would have received had he lived. The prosecutor herein quite forcefully contends that the Court of Common Pleas had no jurisdiction on the appeal following an intermediate death to adjudicate the distribution of rights under the Workmen's Compensation Law and that accordingly payments may not be made to the widow without thereby potentially incurring liability to other interests. As the matter stands before us and in view of the provisions of the Workmen's Compensation Act, particularly *R. S.* 34:15–12z/–13/–21, we are unable to say that the argument is not sound. Particularly are we concerned with the lack of any record upon which the order of substitution and adjudication in favor of the widow were made and with the silence of the record, so far as we discover, with respect to the cause of death, whether from the accident or otherwise. Apparently the attempt was to mould the proceeding roughly upon the practice on an appeal in an action at law. But that, we think, was a mistaken course. We believe that the record should go back for correction and amplification in this respect. It will be remanded to the Court of Common Pleas and if, as we apprehend may be the case, such a situation is there unfolded that the record should be sent back to the Bureau, that result

may be accomplished under the practice approved in *Rubeo v. McMullen Co.*, 117 *N. J. L.* 574; *DeMarco* v. *No-Worry Chemical Co.*, 130 *Id.* 40.

Finally, it is said that the "preponderating probabilities" as produced by the testimony show that the accident did not arise out of the employment. There were well supported proofs that Williams, a painter and handyman employed by the Highway Department, was working with a crew on Cooper River Bridge, Camden, described as "a double jack-knife bridge," that he was warned of an imminent opening of the bridge to allow a boat to pass beneath; that he thereupon lifted the screw and gear with which he was working and in order to save them from being dumped into the river hurriedly carried them, a weight of 100 to 125 pounds, alone, to the end of the bridge; that he had never before carried that load alone, unaided by mechanical or manual assistance; that immediately he felt "all in," experienced pain and otherwise manifested symptoms which brought forth the diagnosis to which we have already referred. There is medical testimony that the experience was the direct cause of the coronary thrombosis. The facts may not be resolved on general principles, but rest, as in most cases of this nature, upon the particular proofs. We are satisfied with the factual conclusions reached by the two lower tribunals.

There is, consequently, ground for the issuing of a writ of *certiorari*. More than three years have passed since the accident and more than one year since the death. The matter should be speeded. Therefore, in accordance with the stipulation of counsel, we shall assume that a writ has issued and has been returned with the record now in our hands. The issues are meritoriously decided.

The determination and judgment in the Pleas will be affirmed, save as to the persons entitled and their respective interests, and also as to the amount and extent of the award if the facts still to be determined effect, under the statute, a change therein. The record will be remanded to the Camden County Court of Common Pleas there to be dealt with in manner hereinbefore indicated. No costs are allowed.